UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

TODD JEFFREY HARTER,  No. 08-10065

Debtor(s).
_____/

Memorandum on Motion to Dismiss
_____

Debtor Todd Harter is an optometrist. He filed his Chapter 7 petition on January 17, 2008, scheduling a priority tax debt of $50,000.00 and general unsecured debt of about $318,000.00, mostly credit cards, and mostly relating to debt incurred prior to his divorce in 2004 and allocated to him by the family law court. He has "passed" the means test, so there is no presumption of abuse in his filing. However, the U.S. Trustee has moved for dismissal of his case pursuant to § 707(b)(3) of the Bankruptcy Code alleging bad faith and that the totality of the circumstances demonstrates abuse. The U.S. Trustee bases her bad faith argument on what she calls an abusive spending pattern before the filing. Her "totality of the circumstances" argument is based primarily on her belief that Harter can afford to pay his debts.

I. Generally Applicable Law

The court begins by noting that once the court has determined that there is no presumption of abuse, the burden of persuading the court that the case ought to be dismissed is on the U.S. Trustee. *Hebbring v. U.S. Trustee*, 463 F.3d 902, 909 (9th Cir. 2006). See also *In re Perrotta*, 378 B.R. 434, 437 (Bankr. D. N.H. 2007)["[A]t a hearing to dismiss a case where the presumption of abuse does not arise, the burden of proof is on the moving party to establish that the case was filed in bad faith or that the totality of the circumstances of a debtor's financial situation demonstrate abuse."]; *In re Ansar*, 383 B.R. 344, 348 (Bankr.D.Minn.2008); *In re Close*, 384 B.R. 856, 860 (Bankr.D.Kan.2008); *In re Longo*, 364 B.R. 161,

164 (Bankr.D.Conn.2007).

Before the 2005 amendments to the Bankruptcy Code, a debtor's case could be dismissed for substantial abuse based upon either lack of honesty or want of need. See *In re Behlke*, 358 F.3d 429 (6th Cir.2004); *In re Krohn*, 886 F.2d 123 (6th Cir.1989). The 2005 amendments codified the lack of honesty and want of need factors under § 707(b)(3). Pursuant to that new statute, a debtor's case can be dismissed for abuse upon either bad faith (i.e. lack of honesty) or totality of the circumstances of the debtor's financial situation demonstrates abuse (i.e. want of need). See *In re Oot*, 368 B.R. 662, (Bankr.N.D.Ohio 2007); *In re Wright*, 364 B.R. 640, (Bankr.N.D.Ohio 2007); *In re Henebury*, 361 B.R. 595 (Bankr.S.D.Fla.2007); *In re Mestemaker*, 359 B.R. 849 (Bankr.N.D.Ohio 2007); In re Simmons, 357 B.R. 480 (Bankr.N.D.Ohio 2006). "It is a closely related fundament of statutory construction that, where Congress codifies prior case law, those prior holdings remain not only good law, but should serve as a valuable touchstone for interpreting the statute." In re Oot, 368 B.R. 662, (Bankr.N.D.Ohio 2007) ( citing CoStar Group Inc. v. LoopNet, Inc., 373 F.3d 544, 553 (4th Cir.2004)). Therefore, most courts look to pre-2005 decisions to provide guidance in evaluating motions to dismiss under § 707(b)(3). *In re Davis*, 378 B.R. 539, 547 (Bkrtcy.N.D.Ohio 2007).

II. Bad Faith

Dismissal based on lack of good faith must be undertaken on an *ad hoc* basis. It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence. *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991). The U.S. Trustee argues that Harter lived an "extravagant lifestyle" based on two trips to Europe in 2007 and the fact that Harter drives a 2006 Audi A-4.

Harter did indeed travel to Europe twice in 2007. In June, his wife of four years, Pamela, and his brother gave him a trip to France as a 50th birthday present. His wife and brother, who had no knowledge about Harter's financial problems (all of which were the result of his divorce from his prior wife), paid for

2

most or all of the trip. In the fall, Pamela went on a business trip to Italy (she is employed by a California winery) and Harter went along. There is no evidence that either trip constituted a pre-bankruptcy "binge" or that significant expenses from these trips will be discharged if the case is not dismissed. Most of the travel expenses were charged on an American Express card and the U.S. Trustee concedes that Harter made payments of over $28,000.00 to American Express in 2007.

As to the "luxury automobile," the court can only note that Audi is not a premier marque, being generally considered about half way between Volkswagen and BMW on the European pecking order, and the A-4 is nowhere near the top of the line. The U.S. Trustee does some damage to her credibility by calling every nice middle-class ride a luxury vehicle.[1]

The U.S. Trustee produced no evidence that Harter had acted dishonestly or recklessly made charges on the eve of bankruptcy with no intent to pay. His lifestyle, despite the U.S. Trustee's characterization, was not lavish or extravagant. The U.S. Trustee has not demonstrated any bad faith conduct and the case will accordingly not be dismissed based on such charges.

III. Totality of the Circumstances

No statutory guidance is provided in § 707(b)(3) as to the factors to consider in evaluating the totality of the circumstances, other than they are to be considered as they relate to the debtor's "financial situation." However, courts that have conducted this analysis have recognized that the section is "best understood as a codification of pre-BAPCPA case law, and as such, pre-BAPCPA case law is still applicable when determining whether to dismiss a case for abuse." *In re Stewart*, 383 B.R. 429, 432 (Bankr.N.D.Ohio 2008). In this circuit, the court has recognized a non-exclusive list of factors to be considered when evaluating the totality of the circumstances, including (1) whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

---

[1]Likewise, she calls Harter's 1965 Ford Mustang a "classic" automobile. This car was Harter's first car, purchased in 1978. It was not running. The Chapter 7 trustee sold it for $4,000.00. Not every old car is a classic.

3

(2) whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) whether the debtor's proposed family budget is excessive or extravagant; (5) whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and (6) whether the debtor has engaged in eve-of-bankruptcy purchases. Of these, the primary factor is the debtor's ability to pay as determined by his ability to fund a Chapter 13 plan. *In re Price,* 353 F.3d 1135, 1139-40 (9th Cir. 2004).

The court has already found no evidence to substantiate claims related to factors 3, 4, and 6. The crux of the U.S. Trustee's argument is centered around two related allegations: that Harter has misrepresented his income and that he in fact could afford to pay his debts. The court must fully examine these allegations in order to decide if this case should be dismissed.

Harter is an optometrist who only has part-time employment, which appears to be the best he can do. His wife works for a local winery. Together, they have net income of a little over $10,000.00 per month. Their mortgage payment and utilities alone consume well over half their income, leaving them barely able to meet their other monthly expenses and unable to fund a meaningful reorganization plan. The U.S. Trustee does not dispute this conclusion easily drawn from Harter's schedules, but the U.S. Trustee argues that the schedules are false and that Harter and his wife in fact have a surplus of $3,000.00 per month to pay creditors.

The U.S. Trustee reaches her conclusion by employing calculations made by an in-house "analyst." The analyst reached his conclusion that the schedules are false and Harter and his wife have $3,000.00 in excess income per month by adding together all of the deposits into the Harters' bank accounts for two years, deducting "Items I understand are non-recurring," and dividing by 24. Upon cross-examination, the analyst testified that his "understanding" as to those items not to be counted as income was based on instructions, not otherwise specified, given to him by the U.S. Trustee's counsel prosecuting this case.

There are numerous problems with the analyst's conclusion, beginning with the fact that it was the

4

direct result of instructions given to him by the moving party's own counsel. Without meaning to impugn the integrity of counsel, calculations based on these instructions are simply too biased to be given any credibility. Moreover, both Harter and his wife testified that the income figures in the schedules are accurate, explaining that they liquidated several assets and refinanced their home during the specified period in order to pay creditors. The court found both of them to be credible, and Pamela to be very credible. The court has no difficulty finding that Harter and his wife testified truthfully and that the U.S. Trustee's argument that they have excess income is a fiction.

Harter is not eligible for a Chapter 13, as his debts exceed the limits of § 109(e) of the Code. He could file a Chapter 11, but the cost of these proceedings together with his family income and expenses make it unlikely that anything could be achieved beyond payment of his priority tax debt. More than likely, spitting Harter out of bankruptcy will only result in a great deal of stress on Harter and his wife with no tangible benefit for most of his creditors.

IV. Other Factors

While the court has found that the primary factors to be considered in deciding if the totality of the circumstances requires dismissal of a case do not militate in favor of dismissal, each case is unique. In this case there are other factors which also elects to consider and reinforce the court's determination that it ought not dismiss this case.[2]

---

[2] As the court noted in *In re McGillis*, 370 B.R. 720, 746n30 (Bkrtcy.W.D.Mich.2007): " There could be in any particular case a whole host of circumstances that a court would have to consider before making any final assessment as to the debtor's financial condition under that section. Indeed, it would appear that non-financial factors could also still be relevant, for Section 707(b)(3)(B) requires only that the court consider the debtor's financial condition in connection with the broader question of whether there has been an abuse under Section 707(b)(1). The implication, of course, is that there may be factors outside of the debtor's financial condition that would mitigate a finding of abuse otherwise justified under Section 707(b)(3)(B) or, alternatively, there may be other factors that would warrant a finding of abuse even though consideration of only financial circumstances under Section 707(b)(3)(B) would not."

5

First and foremost, the court is very concerned about the effect dismissal would have on Pamela. While she is not a debtor, she is hardly a disinterested party. Her income is fully considered in determining her husband's ability to pay his debts. All of the marital community is property of her husband's bankruptcy estate pursuant to § 541(a)(2) of the Code. If this case is dismissed, she will be denied the benefits of a community discharge pursuant to § 524(a)(3). She is entirely innocent, having married into this situation four years ago with no understanding of the depth of her new husband's financial problems, and very much at risk if this case is dismissed.

The court is used to seeing debtors exaggerate the seriousness of their health problems and those of their family members, so the court was surprised to see that Pamela was clearly in distress when called to testify even though she made no mention of her condition in her declaration and Harter's counsel made mention of it for the first time only in his opening statement. Pamela is dealing with a recurring bout of pulmonary edema and was clearly stressed by the proceedings and no doubt concerned about having to deal with both her health issues and her husband's financial mess. She appeared to the court to be forthright and truthful, and has done the responsible thing by taking control of the household finances once she learned the full extent of her husband's problems. While it may not be a primary concern, Pamela has done nothing deserving of the grief she would come to if her husband is forced to deal with his financial problems outside of bankruptcy. If the court is to consider the totality of circumstances, then Pamela's situation is something the court should at least think about.

The second unusual factor in this case is that the Chapter 7 trustee has liquidated Harter's non-exempt assets. Harter argues that some sort of mootness or estoppel results when the U.S. Trustee moves to dismiss a Chapter 7 case without seeking to stay asset liquidation while the motion is pending. While the court agrees that this is yet another circumstance to be considered, there is no basis for automatically denying a motion to dismiss after the Chapter 7 trustee has begun to liquidate an estate. It is true that liquidation of non-exempt assets is the *quid pro quo* for a discharge, and if there has been too much *quid* it may be unfair to deny the *quo*. In addition, turning significant proceeds from liquidation back to the debtor may be unfair to the creditors, and this seems like a factor the court ought to consider in some cases. However, in this case we

6

are dealing with only a few thousand dollars which would go to the priority tax debt and not result in a dividend to general unsecured creditors so the court declines to consider liquidation of assets be either a bar to the U.S. Trustee's motion or a significant factor in the totality of the circumstances.

V. Conclusion

    Harter's financial problems are the result of dissolution of a prior marriage, which is a common "calamity" which often results in a bankruptcy filing. They are not, as characterized by the U.S. Trustee, the result of an abusive spending pattern or a lavish lifestyle. Bankruptcy relief is entirely appropriate under these circumstances; Harter and his wife have done nothing to deserve the stresses and difficulties they would endure if bankruptcy relief is denied. The U.S. Trustee has come nowhere near meeting her burden of demonstrating abuse. Accordingly, the motion to dismiss will be denied.

    This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Harter shall submit an appropriate form of order forthwith.

Dated: August 19, 2008

                                         Alan Jaroslovsky
                                         U.S. Bankruptcy Judge